# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| FRANKFORD VAPOR INC. and<br>MUHAMMAD BILAL KHAN,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARCO RUBIO, ET AL.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:25-cv-45<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion") (Dkt. #12). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

The facts underlying this case are largely undisputed. On December 7, 2023, Plaintiff Muhammad Bilal Khan (the "Beneficiary" or "Khan") submitted a Form DS-160, Online Nonimmigrant Visa Application to apply for an E2 Treaty Trader or Investor visa pursuant to the Immigration and Nationality Act ("INA") (Dkt. #10-6). On January 24, 2024, Kahn appeared for an interview at the U.S. Consulate-General in Karachi, Pakistan, and executed an E2 nonimmigrant visa application (Dkt. #10 at ¶¶ 42–43; Dkt. #10-5). That same day, the consular officer refused Khan's visa application under INA § 221(g), 8 U.S.C. 1201(g) (Dkt. #10 at ¶ 44; Dkt. #10-5).

Khan contends that his application "is still awaiting completion" (Dkt. #10 ¶ 46). In contrast, the U.S. Department of State contends the consular officer determined that Khan failed to demonstrate his eligibility for the visa sought and that additional security screening was required (Dkt. #12-1 at ¶ 5). Even though this additional security screening is ongoing, the U.S. Department

of State maintains Khan's visa application was already refused under INA § 221(g), 8 U.S.C. §1201(g) (Dkt. #12-1 at ¶ 6).

On January 14, 2025, Plaintiff Frankford Vapor, Inc. (the "Petitioner") and Khan (collectively, "Plaintiffs") initiated this lawsuit (Dkt. #1). On May 19, 2025, Plaintiffs filed their First Amended Complaint (the "Complaint") asking the Court to issue judgment in their favor and against all Defendants[1] under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555, 706, the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 (Dkt. #10). The remedies Plaintiffs seek are premised on this purported delay in adjudicating Khan's visa application. Specifically, Plaintiffs seek an order requiring Defendants to "complete forthwith the in-process visa application by way of issuing a final decision on the currently pending and in process nonimmigrant visa application;" to "explain the reason why it cannot be done in a timely manner;" and to apprise the Court and Plaintiffs of the "proposed remedy for such reason" (Dkt. #10 at ¶ 63).

On June 2, 2025, Defendants filed their Motion urging the Court to dismiss Plaintiffs' Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted (Dkt. #12). Plaintiffs responded (Dkt. #15), and Defendants replied (Dkt. #16). The Motion is now ripe for adjudication.

---

[1] In the Complaint, Defendants are: (1) Antony Blinken (or successor), in his official capacity as Secretary of State; (2) Merrick Garland (or successor), in his official capacity as Attorney General of the United States; (3) Rena Bitter (or successor), in her official capacity as Acting Assistant Secretary for Consular Affairs; (4) Alejandro Mayorkas (or successor), in his official capacity as Secretary of Homeland Security; (5) Donald Blome (or successor), in his official capacity as US Ambassador to Pakistan; (6) Scott Urbom (or successor), in his official capacity as Consul General U.S. Consulate, Karachi; (7) John Does #1-10, in their official capacities as Consular Officers; and (8) Damien Diggs (or successor), as U.S. Attorney for the Eastern District of Texas (Dkt. #10 at ¶¶ 2–9). The case caption has been updated to reflect Defendants' successors as of the date of this order.

## LEGAL STANDARD

I.      Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court does not have statutory and constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (internal quotation marks omitted) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

II.     Rule 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each

claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or

elements.'" *In re S. Scrap Material Co.*, LLC, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendants first raise a jurisdictional challenge under Rule 12(b)(1), arguing Plaintiffs' claims are moot because Khan's visa application was adjudicated (Dkt. #12 at pp. 4–8). Defendants then raise the following substantive challenges under Rule 12(b)(6): (1) Plaintiffs' claims are nonjusticiable; (2) Plaintiffs fail to demonstrate the existence of a non-discretionary duty that a U.S. State Department consular officer failed to take; (3) Plaintiffs fail to state a claim under the APA; (4) Plaintiffs are not entitled to relief under the Mandamus Act; and (5) Plaintiffs are not entitled to relief under the Declaratory Judgment Act (Dkt. #10 at pp. 8–20). The Court will begin by addressing the relevant legal authority on which the Court would rely to review Plaintiffs' claims. Then, the Court will address the jurisdictional challenge. Finally, the Court will address the substantive challenges.

### I.     Applicable Law

The Court reiterates what, exactly, Plaintiffs seek through this action: to compel Defendants to "complete the pending action" regarding Khan's visa application, which was refused on January 24, 2024, pending the submission of certain requested information (Dkt. #10 at p. 2). To do so, Plaintiff relies on the APA and the Mandamus Act (Dkt. #10 at ¶¶ 10, 16, 51, 54).

First, the APA requires each agency to "proceed to conclude a matter presented to it" within "a reasonable time," 5 U.S.C. § 555(b), and authorizes the Court to "compel agency action

5

unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also* § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Second, the Mandamus Act confers district courts with jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, "mandamus is not available to review the discretionary acts of officials." *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992). With these principles in mind, the Court proceeds with its analysis.

## II.     Rule 12(b)(1)

Defendants first contend Plaintiff's Complaint should be dismissed as moot. The Court agrees.

Article III of the United States Constitution limits federal court jurisdiction such that it may only here "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. The Supreme Court has interpreted this limitation to require that "a justiciable case or controversy . . . remain extant at all stages of review, not merely at the time the complaint is filed." *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013) (citation modified). When a controversy no longer presents a live issue "or the parties lack a legally cognizable interest in the outcome," the case becomes moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). As a result, "[a] case that becomes moot at any point during the proceedings is 'no longer a Case or Controversy for purposes of Article III,' and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385–86 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

Here, Defendants argue that contrary to Plaintiffs' claim that his visa application has not been adjudicated yet, the consular officer has already adjudicated Plaintiff's visa application by refusing it on January 24, 2024, under INA § 221(g) (Dkt. #12 at p. 4; Dkt. #12-1 at ¶ 5). Specifically, after Khan appeared for his interview at the U.S. Consulate-General in Karachi, Pakistan on January 24, 2024, his visa application was deemed refused (Dkt. #10 at ¶¶ 42–44; Dkt. #10-5). Thus, it follows that this Court cannot compel Defendants to complete an application review that has already been refused.

Indeed, Plaintiffs admit Khan's visa application was refused in an exhibit attached to the Complaint—namely, a chart documenting the date, description, and comments regarding the events leading up to this litigation (Dkt. #10-5). Within that chart, under "1/24/2024", the "Comments" column reads "221g Refusal received with a set of 7 questions to answer Pending Administrative Processing" (Dkt. #10-5). Plaintiffs also attach another exhibit to their Complaint, a U.S. Department of State webpage titled, "Administrative Processing Information," which notes the following:

> When an applicant is refused under 221(g), it means the consular officer determined that the applicant was not eligible for a visa after completing and executing the visa application and any required interview. It is possible that a consular officer will reconsider a visa application refused under 221(g) at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible.

(Dkt. #10 at ¶ 34; Dkt. #10-3 at p. 1).

Plaintiffs contend Khan's visa application is undergoing "administrative processing," which indicates the application remains pending (Dkt. #10 at ¶ 36). In contrast, Defendants maintain that the consular officer's refusal is a final agency action (Dkt. #12 at p. 6). In support of this position, Defendants have attached the Declaration of Rachel Ann Peterson ("Peterson"), an

7

attorney-adviser for the U.S. Department of State (Dkt. #12-1). Peterson states that the consular officer "refused [Khan's] visa application under INA § 221(g), 8 U.S.C. 1201(g)," because Khan "failed to demonstrate his eligibility for the visa sought and that additional security screening was required" (Dkt. #12-1 at ¶ 5). Peterson further notes that as of May 5, 2025, "the additional security screening is ongoing," but the "visa application remains refused under INA § 221(g), 8 U.S.C. § 1201(g)" (Dkt. #12-1 at ¶ 6).

In further support of their argument that there is no live controversy for the Court to adjudicate, Defendants direct the Court to *Bamdad v. U.S. Dept. of State*, No. 1:23-CV-757-DAE, 2024 WL 1462948 (W.D. Tex. Feb. 9, 2024). In that case, the plaintiff filed a Form I-130, "Petition for Alien Relative," on behalf of his wife, which was refused under INA § 221(g). *Bamdad*, 2024 WL 1462948, at *1. The plaintiff was advised the consular office would conduct additional security screening, and, like Khan, the plaintiff argued this administrative processing suggests his wife's visa application was not fully adjudicated. *Id*. at *2–3. Like Defendants argue in the instant case, the defendants in *Bamdad* argued that what the plaintiff seeks through his lawsuit is for Defendants to be ordered to reconsider the visa application's refusal. *Id*. at *3. The *Bamdad* court agreed with the defendants and reasoned that because the visa application remains refused, the court lacked jurisdiction to consider the plaintiff's request for a writ of mandamus compelling the defendants to adjudicate the visa application. *Id*. at *6.

In Texas, most district courts follow the reasoning in *Bamdad*, finding that a section 221(g) refusal of a visa application constitutes a final decision, even if it is followed by administrative processing. *See Mazher v. Rubio*, No. 4:25-CV-017-P, 2025 WL 2471789, at *5 (N.D. Tex. Aug. 11, 2025) (collecting cases), *report and recommendation adopted*, No. 4:25-CV-00017-P, 2025 WL

8

2468205 (N.D. Tex. Aug. 27, 2025). The Court similarly holds that Defendants' refusal of Khan's visa application constituted a final adjudication of the application, and thus, the Court cannot provide Plaintiffs with the requested relief of issuing an order compelling Defendants to conclude administrative processing and render *another* final decision.

Accordingly, because Plaintiffs' claims for unreasonable delay under the APA and Mandamus Act are moot, the Court lacks jurisdiction to adjudicate this case.

### III.     Rule 12(b)(6)

Because the Court has established that it does not have jurisdiction to adjudicate this action, the Court need not address Defendants' challenges under Rule 12(b)(6). However, even if Plaintiffs' claims were not moot, the Court would find that Plaintiffs' claims are nonjusticiable, and Plaintiffs fail to state a claim upon which relief can be granted under the APA and the Mandamus Act.

First, "[t]he [INA] does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions" *Dept. of State v. Munoz*, 602 U.S. 899, 908 (2024). Second, to proceed with a claim under the APA, the plaintiff must "assert[] that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64. Third, to obtain mandamus relief, the plaintiff must allege an officer or employee of the United States or any agency thereof failed to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. Finally, Plaintiff's reliance on the Declaratory Judgment Act, 28 USC §§ 2201–2202, for judicial review of an agency action in the context of this case, is misplaced and is really a request for declaratory and injunctive relief under the APA, 5 U.S.C. § 703.

Defendants direct the Court to a Federal Circuit case on this issue: *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam) (unpublished). In *Karimova*, the

Federal Circuit found a visa applicant was not entitled to the relief she sought under the Mandamus Act or the APA. 2024 WL 3517852 at *3. In that case, a consular officer reviewed the plaintiff's visa application and interviewed her at the United States Embassy in Georgia. *Id.* at *2. The officer refused her application, and then, placed her application in "administrative processing" to verify certain qualifications for the requested visa. *Id.* Despite the fact that the consular officer chose to leave the plaintiff's application in administrative processing in case something changes the plaintiff's eligibility, the status of the visa application remained refused. *Id.* The *Karimova* court reasoned that the plaintiff failed to show the defendant violated a legal duty owed to her to obtain a writ of mandamus, and the plaintiff similarly did not identify a discrete act the defendant failed to perform to plausibly allege agency inaction under the APA. *Id.* Accordingly, the Federal Circuit affirmed the district court's dismissal of the plaintiff's claim, holding the plaintiff was not entitled to the exceptional and rare relief of an order compelling the consular officer overseeing her visa application to make yet another "final decision" on her already-refused visa application. *Id.* at *6.

Here, like the *Karimova* plaintiff experienced, a consular officer reviewed Khan's application, interviewed him, and ruled that no visa would be granted. (Dkt. #10 at ¶ 44; Dkt. #10-5). Defendants refused Khan's visa application under INA § 221(g), which is one of the allowed actions on a visa application. *See* 8 U.S.C. § 1201(g). "Nothing in federal law speaks to the ability of a consul, after making that decision, to hold onto the application in case circumstances later change in the applicant's favor, thereby saving the applicant the time and cost of filing a whole new visa application." *Karimova*, 2024 WL 3517852, at *4. Thus, because Plaintiffs have not identified a legal duty Defendants violated or a legally required, discrete act Defendants failed to perform, Plaintiffs have not alleged plausible claims under the Mandamus Act or APA.

10

Accordingly, if Plaintiffs' claims were not moot, Plaintiff would fail to state a claim upon which relief can be granted under Rule 12(b)(6).

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") (Dkt. #12) is hereby **GRANTED** and the case is hereby **DISMISSED**.

It is further **ORDERED** that the Clerk is directed to **CLOSE** this civil action.

**IT IS SO ORDERED.**

SIGNED this 2nd day of February, 2026.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE